IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE ALDORASI | : | CIVIL ACTION |
| *INDIVIDUALLY AND ON BEHALF OF* | : | |
| *HER HUSBAND, PHILIP ALDORASI* | : | No. 17-4580 |
| | : | |
| v. | : | |
| | : | |
| CROSSROADS HOSPITALITY AND | : | |
| MANAGEMENT COMPANY, LLC, et | : | |
| al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                         **September 25, 2018**

      In this negligence action, Plaintiff Marlene Aldorasi, individually and on behalf of her husband, Philip Aldorasi, seeks damages for injuries she and her husband sustained when they were struck by falling building material while exiting a Philadelphia hotel where they had parked their car. Plaintiff brings claims against Crossroads Hospitality and Management Company, LLC, the business entity that operates or manages the hotel where the accident occurred, and two hotel employees: Marsha Ray, the hotel's general manager, and George McFeeters, the director of engineering. After Plaintiff filed this action in the Court of Common Pleas of Philadelphia County, Defendants promptly removed the case to federal court, asserting Ray and McFeeters had been fraudulently joined to destroy diversity and that, disregarding these individual Defendants' Pennsylvania citizenship, subject matter jurisdiction was proper under 28 U.S.C. § 1332(a). Defendants also moved to dismiss all claims against the nondiverse individual Defendants. Plaintiff, disputing Defendants' fraudulent joinder allegations, responded with a series of her own motions, seeking to remand the case to state court, amend her Complaint to clarify her allegations against the individual Defendants, or voluntarily dismiss this action without prejudice so that she could refile her proposed amended complaint in state court.

Although presented in several different motions governed by different legal standards, the parties' dispute centers on whether this case should proceed in state or federal court. As explained below, the Court agrees with Defendants that Plaintiff's claims against Ray and McFeeters are not colorable as pleaded in her original state court Complaint. However, because it is undisputed that Plaintiff can state a claim against these individual Defendants—and, indeed, has done so in her proposed amended complaint—and upon consideration of the relevant equitable factors, the Court will exercise its discretion under 28 U.S.C. § 1447(e) to permit Plaintiff to amend her Complaint to rejoin Ray and McFeeters as defendants and will remand the case to the Court of Common Pleas of Philadelphia County.

**BACKGROUND**

On April 3, 2016, Marlene and Philip Aldorasi, both citizens of Pennsylvania, parked their car in the parking garage at the Sheraton Philadelphia Downtown Hotel and walked from the garage into the hotel to exit onto 17th Street. While exiting the hotel, they were struck and injured by drywall, plasterboard, or other material that dislodged from a wall or ceiling above the doorway leading to 17th Street.

On October 9, 2017, Marlene Aldorasi commenced the above-captioned civil action by filing a Complaint against Crossroads, Ray, and McFeeters in the Court of Common Pleas of Philadelphia County.[1] In her Complaint, which Plaintiff filed in her individual capacity and on behalf of her husband, Plaintiff alleges Defendants breached various duties owed to the Aldorasis as persons lawfully on the hotel premises, including their duty to properly maintain the hotel

---

[1] Crossroads is a Delaware limited liability company headquartered in Virginia. Like the Aldorasis, Ray and McFeeters are both citizens of Pennsylvania.

premises and to reasonably inspect and discover the dangerous conditions which caused the accident in which the Aldorasis were injured.

The above-captioned action is the third civil action Plaintiff has filed in the Court of Common Pleas of Philadelphia County with respect to the April 3, 2016, accident. On May 11, 2017, five months before filing this action, Plaintiff and her husband filed an action against four corporate entities, including Interstate Hotels & Resorts, Inc., the parent company of Crossroads (the First Civil Action),[2] raising allegations of negligence virtually identical to those made in this case. Like Defendants in this case, the defendants in the First Civil Action removed that action to federal court. Following the removal, the Aldorasis filed a praecipe to withdraw the action, and the case was ultimately dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

On June 23, 2017, Plaintiff filed a second negligence action against Crossroads and two other corporate entities[3] (the Second Civil Action), again raising allegations of negligence virtually identical to those made in this case. Although in the First Civil Action, Plaintiff and her husband had requested damages in an amount in excess of $50,000, Plaintiff filed the Second Civil Action solely on her own behalf as an "arbitration matter," specifically alleging the amount in controversy was "*not* in excess of $50,000" and requesting judgment "in an amount *not* in

---

[2] The three other Defendants named in the First Civil Action were Philadelphia Sheraton Garage Corp. d/b/a Sheraton Hotel, Starwood Hotels and Resorts Worldwide, LLC, and Marriott International, Inc. Defs.' Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Compl. Ex. A, ¶¶ 3, 5-6.

[3] The two other corporate entities named as Defendants in the Second Civil Action were Starwood Hotels and Resorts Worldwide, LLC, and Marriott International, Inc. Defs.' Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Compl. Ex. C ¶¶ 3-4.

3

excess of $50,000."[4]  Defs.' Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Compl. Ex. C, at 1 & ¶¶ 6 & 29 (emphasis added).  The defendants in the Second Civil Action answered the complaint on July 21, 2017, and the parties thereafter exchanged written discovery.  In interrogatory responses served on Plaintiff on August 16, 2017, Crossroads disclosed that members of its engineering department were responsible for maintaining the hotel premises on the date of the Aldorasis' accident and identified George McFeeters as the person most knowledgeable about the maintenance procedures in effect at the time of the accident.  *See id.* Ex. D, ¶¶ 15, 18.  Crossroads also represented, in both its interrogatory responses and answers to Plaintiff's requests for admission, that repeated inspections of the ceiling in question revealed that "it never required repair [at] any time subsequent to its original construction in or about 1981 other than in connection with the incident [involving the Aldorasis] itself."  *See id.* Ex. D, ¶ 7; *see also id.* Ex. F, ¶ 4 ("The referenced ceiling never demonstrated or experienced maintenance problems/conditions of any kind at any time subsequent to the date of its original construction in or about 1981.").[5]  On October 6, 2017, Plaintiff filed a praecipe to withdraw the Second Civil Action.

Three days later, Plaintiff filed the instant case (the Third Civil Action) in state court on October 9, 2017, again seeking damages in an amount in excess of $50,000, as in the First Civil Action.  On October 13, 2017, Defendants removed the case to this Court citing the federal

---

[4] Although there was complete diversity of the parties in the Second Civil Action, because Plaintiff expressly limited the damages sought to an amount below the $75,000 threshold for diversity jurisdiction, the case was not removable.

[5] Plaintiff disputes Crossroads' assertion that the ceiling in question was never repaired prior to the accident at issue in this case, and contends that documents produced by Crossroads and reviewed by an engineer retained by Plaintiff show that the ceiling was improperly repaired at some point.  Because only written discovery was conducted in the Second Civil Action, the parties' theories have not been tested through depositions and expert discovery.

diversity jurisdiction statute and arguing the two individual Defendants (Ray and McFeeters) were fraudulently joined. Consistent with their position that Ray and McFeeters were fraudulently joined, Defendants also moved to dismiss Plaintiff's claims against these individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 18, 2017.

On October 24, 2017, Plaintiff opposed the motion to dismiss and also moved to remand the case to state court. Three weeks later, on November 14, 2018, Plaintiff moved for leave to amend her Complaint to "clarify and detail" her allegations against Ray and McFeeters. Pl.'s Mot. for Leave to File Am. Compl. ¶ 6. Plaintiff's proposed amended complaint adds allegations that Ray specifically authorized inadequate repairs of the ceiling above the 17th Street exit and that McFeeters specifically directed co-employees to inadequately repair the ceiling, a known hazard. The proposed amended complaint also faults all Defendants, including Ray and McFeeters, for improperly repairing and maintaining the ceiling despite knowing it posed a risk of becoming detached and falling.

On December 14, 2017, the Court heard argument on all pending motions. At the conclusion of the argument, Plaintiff's counsel candidly advised the Court that if the Court were to deny Plaintiff's motion to remand, counsel intended to withdraw this federal court action and refile Plaintiff's proposed amended complaint—the allegations of which defense counsel conceded were sufficient to state a claim against Ray and McFeeters—in state court. Plaintiff then made an oral motion to withdraw the Complaint in this action without prejudice and, after the argument, submitted a proposed order dismissing this action without prejudice pursuant to Rule 41(a)(1)(A)(i).[6] Although Defendants did not oppose Plaintiff's oral motion while in court,

---

[6] Following the oral argument, Plaintiff filed a further complaint against Crossroads, Ray, and McFeeters in state court (the Fourth Civil Action) based on allegations substantially similar to those made in her proposed amended complaint in this case. Plaintiff filed the Fourth Civil

they subsequently filed a written opposition, asserting that any Rule 41(a)(1) dismissal had to be *with* prejudice under Rule 41(a)(1)(B) because Plaintiff had previously voluntarily dismissed two prior actions involving the same claims asserted in this action.[7] Plaintiff thereafter moved to voluntarily dismiss this action without prejudice pursuant to Rule 41(a)(2), and Defendants again opposed the motion. The Court held additional argument on all pending motions on April 12, 2018.

**DISCUSSION**

Plaintiff moves to remand this case to state court, disputing Defendants' contention that Ray and McFeeters were fraudulently joined to defeat diversity. The doctrine of fraudulent joinder is an exception to the requirement that when removal is predicated on diversity of citizenship, there must be complete diversity between the parties. *See In re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006). Under the doctrine, "[i]n a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. As the proponent of federal jurisdiction, a removing defendant alleging fraudulent joinder bears a "heavy burden of persuasion." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted). To demonstrate a defendant

---

Action in anticipation that she would be permitted to voluntarily dismiss this action without prejudice based on the discussion during the December 14, 2017, oral argument, and to avoid any issue regarding the statute of limitations. Defendants subsequently removed the Fourth Civil Action and moved to dismiss it. That motion will be disposed of by separate order.

[7] Under Rule 41(a)(1)(B)'s two dismissal rule, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." At a minimum, the Third Civil Action includes the same claim as the Second Civil Action, a previously dismissed state-court action, as Plaintiff asserts virtually identical negligence claims against Crossroads in both actions.

was fraudulently joined, the removing party must show "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Id.* (emphasis added) (citation omitted). This test includes both an objective and a subjective component. *See id.*

With respect to the objective component—whether there is a "reasonable basis in fact or colorable ground supporting the claim"—a claim is colorable so long as it is not "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992) (citations omitted). The question is not whether the complaint states a claim sufficient to withstand a Rule 12(b)(6) motion to dismiss against the nondiverse defendant, but whether there is "a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Id.* (quoting *Boyer*, 913 F.2d at 111). Thus, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Id.* at 852.

In determining whether a claim against a nondiverse defendant is colorable, a court "must 'focus on the plaintiff's complaint at the time the petition for removal was filed.'" *Id.* at 851-52 (citation omitted); *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) (recognizing "[t]he defendant's right to remove is to be determined according to the plaintiffs' pleading at the time of the petition for removal"). The court "must assume as true all factual allegations of the complaint" and "must resolve any uncertainties as to the current state of controlling substantive state law in favor of the plaintiff." *Batoff*, 977 F.2d at 852 (internal quotation marks and citations omitted). The court may also take a limited look beyond the pleadings to consider "reliable evidence" proffered by the defendant to support the removal. *See*

7

*Briscoe*, 448 F.3d at 219-20 (holding a district court could consider evidence in the record of prior proceedings and matters subject to judicial notice in determining whether the plaintiffs could make a colorable argument to overcome the nondiverse defendants' statutory limitations defense); *Boyer*, 913 F.2d at 112 (suggesting a limited piercing of the pleadings may be permissible "to decide whether plaintiffs have asserted a 'colorable' ground supporting the claim against the joined defendant"). However, the court may not, "in the guise of deciding whether the joinder was fraudulent, step[] from the threshold jurisdictional issue into a decision on the merits." *Boyer*, 913 F.2d at 112.[8]

Defendants argue there is no colorable ground in law supporting Plaintiff's claims against Ray and McFeeters because, as employees of Crossroads, they can be liable only for misfeasance under the "participation theory," yet the Complaint lacks any allegations of misfeasance by either of them. Defendants maintain the participation theory is the only viable theory of liability against Ray and McFeeters. Plaintiff disputes that the participation theory applies to managers and supervisors like Ray and McFeeters and contends the Complaint alleges a basis for liability under this theory in any event.[9]

---

[8] The subjective component of the fraudulent joinder inquiry—whether the plaintiff lacks any "real intention in good faith to prosecute the action against the defendant or seek a joint judgment"—requires the court "to look beyond the allegations of [the] complaint to discern whether [the] plaintiff[] intend[s] to prosecute [his] claims against [the allegedly fraudulently joined defendant]." *Lopez v. Home Depot, Inc.*, No. 08-1020, 2008 WL 2856393, at *4 (E.D. Pa. July 22, 2008) (citations and internal quotation marks omitted). The subjective inquiry is not at issue here, as Defendants do not argue Plaintiff does not intend to prosecute her claims against Ray and McFeeters. In fact, the limited evidence in the record suggests Plaintiff intends to prosecute her claims against the individual Defendants, as she promptly served them with the Complaint in this action at the same time Crossroads was served, and sought leave to amend her claims against them in light of the pleading deficiencies identified in Defendants' motion to dismiss.

[9] Plaintiff also urges the Court to consider her proposed amended complaint—which alleges that Ray and McFeeters authorized, directed, or otherwise participated in the inadequate repair of the

Under Pennsylvania law, a corporate employee may be liable for his own torts, even if he was acting within the scope of his employment when he engaged in the tortious conduct in question, and regardless of whether the employer may also be liable for the employee's conduct. *See Cosmas v. Bloomingdales Bros., Inc.*, 660 A.2d 83, 88-89 (Pa. Super. Ct. 1995); *see also Boyer*, 913 F.2d at 112 (recognizing that, under Pennsylvania law, employees may be liable for their own fraud and misrepresentations "even if these actions were taken in the course of their employment"). The fact that the employee is acting for a corporation "may make the corporation vicariously or secondarily liable under the doctrine of respondeat superior," but "it does not . . . relieve the individual of his responsibility." *Cosmas*, 660 A.2d at 88-89 (quoting *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 89 n.5 (Pa. 1983)).

Pennsylvania law also recognizes the "participation theory" as a basis on which corporate actors can be liable for their own tortious conduct:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

*Wicks*, 470 A.2d at 90 (quoting 3A Fletcher, *Cyclopedia of the Law of Private Corporations* § 1137, p. 207 (perm. ed. rev. 1975)). Liability under the participation theory "attaches only where the corporate officer is an actor who participates in the wrongful acts." *Id.* Such liability

---

ceiling above the 17th Street exit, *see* Proposed Am. Compl. ¶¶ 9-10, 19, 22(g), and which Defendants concede states a claim against Ray and McFeeters under the participation theory—in determining whether her claims against these Defendants are colorable. As Defendants note, however, "in applying the fraudulent joinder doctrine, 'the district court must focus on the plaintiff's complaint at the time the petition for removal was filed.'" *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d Cir. 2013) (quoting *Briscoe*, 448 F.3d at 217). Hence, the Court will not consider Plaintiff's proposed amended complaint as part of its fraudulent joinder analysis.

may be imposed "for 'misfeasance,' i.e., the improper performance of an act, but not 'mere nonfeasance,' i.e., the omission of an act which a person ought to do." *Loeffler v. McShane*, 539 A.2d 876, 878 (Pa. Super. Ct. 1988) (quoting *Wicks*, 470 A.2d at 90); *see also Brindley v. Woodland Vill. Rest., Inc.*, 652 A.2d 865, 869 (Pa. Super. Ct. 1995) (explaining that misfeasance is "the doing of something which ought not be done, something which a reasonable man would not do, or doing it in such a manner as a man of reasonable and ordinary prudence would not do it," while nonfeasance means "omitting to do, or not doing, something which ought to be done, which a reasonable and prudent man would do" (quoting *Nelson v. Duquesne Light Co.*, 12 A.2d 299, 303 (Pa. 1940))).

Although Plaintiff suggests the participation theory does not apply to managers and supervisors like Ray and McFeeters, *see* Pl.'s Resp. to Mot. to Dismiss of Ray and McFeeters ¶ 9, state and federal courts in Pennsylvania courts have routinely applied the theory to employees and other non-officer agents, *see, e.g.*, *Smoyer v. Care One, LLC*, No. 16-1696, 2017 WL 575070, at *5 n.7 (W.D. Pa. Jan. 23, 2017) (noting that "[a]lthough *Wicks* involved corporate officers, the intermediate Pennsylvania appellate courts, as well as federal courts applying Pennsylvania law, have applied the participation theory to ordinary employees as well"), *report & recommendation adopted by* 2017 WL 57353 (W.D. Pa. Feb. 13, 2017); *Greenberg v. Macy's*, No. 11-4132, 2011 WL 4336674, at *4 (E.D. Pa. Sept. 15, 2011) ("Under Pennsylvania law's 'participation theory,' a corporate employee may be held personally liable for negligent activity carried out within the scope of her employment."); *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (characterizing the participation theory as applying to "agent[s] or officer[s] of a corporation"); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247, 252 (Pa. Super. Ct. 1977) (holding an individual could be liable for his personal involvement in

designing and selling equipment to a car wash, even though he was at all relevant times acting as an agent or employee of the equipment company); *cf. Boyer*, 913 F.2d at 112 (citing *Loeffler* and *Wicks* for the proposition that Pennsylvania law recognizes "a cause of action against *employees* whose fraud and misrepresentations contributed to plaintiff's damages, even if these actions were taken in the course of their employment" (emphasis added)). Notably, Plaintiff cites no cases holding the participation theory does not extend to corporate employees,[10] and offers no basis on which to conclude Pennsylvania law is uncertain on this issue.

Under the participation theory, Ray and McFeeters may be held liable for misfeasance but not for "mere nonfeasance"; hence, the fraudulent joinder issue turns on whether Plaintiff's Complaint alleges a colorable claim of misfeasance by these individual Defendants. In evaluating this issue, the Court is guided by the Pennsylvania Supreme Court's decision in *Wicks*. In that case, the plaintiffs, owners of homes built on low ground in a sloped area of a residential development, sued the developer and the builder of some of the homes in the development, seeking damages for personal injury and property damage resulting from drainage problems in the development. *See Wicks*, 470 A.2d at 87. The plaintiffs also named as defendants three individual officers of the developer, two of whom were sole shareholders of the builder, alleging the individual defendants were aware or should have been aware of the potential

---

[10] The only case this Court has identified in which a Pennsylvania court has declined to extend the participation theory to corporate employees—*Alpensjo v. Sandvik Materials Technology, Inc.*, No. 2010 CV 1277, 2012 WL 7177989 (Pa. Ct. Com. Pl. May 2, 2012)—does not support the expanded individual employee liability urged by Plaintiff in this case. In *Alpensjo*, the court held the participation theory applies to individual corporate employees only when those employees are also officers or owners of the corporation. But the court relied on this interpretation to hold that an employee who did not possess officer or owner status could not be individually liable for the plaintiff's wrongful termination. *Alpensjo* thus does not support the proposition that employees to whom the participation theory does not apply are subject to greater individual liability than officers to whom the theory does apply.

11

drainage problems in the development and were negligent in failing to take appropriate measures to eliminate or minimize such problems, including not ordering or performing adequate soil testing of the site of the concentrated sewage and water; failing to provide for any special drainage considerations in the grading and landscaping of the premises; building and selling a house which, because of its location, would undoubtedly have a drainage problem; and negligently excavating drainage ditches. *See id.* at 88-89. Addressing the sufficiency of the allegations against the individual corporate officers and shareholders under the participation theory, the Pennsylvania Supreme Court held that while "the mere averment that a corporate officer should have known the consequences of the liability-creating corporate act" was insufficient to impose liability, the complaint "c[ould] be read as setting forth, generally, that the individual [defendants] actually knew that the location of the proposed [development] created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed." *Id.* at 90. The court concluded that, so construed, the complaint was sufficient to withstand demurrer. *Id.*

Here, in contrast, the Complaint faults Ray and McFeeters only for what they failed to do. While the Complaint can be fairly read to allege that Ray and McFeeters knew or should have known of the dangerous condition of the wall or ceiling immediately above the hotel's 17th Street exit and had a duty to properly maintain the hotel premises, *see* Compl. ¶¶ 19, 23, Defendants are alleged to have breached this duty solely through inaction. Specifically, Plaintiff alleges Ray and McFeeters breached their duty by "fail[ing] to maintain the subject premises in a safe and reasonable manner"; "[f]ail[ing] to warn persons, such as Plaintiff, that the condition was a hazard"; "[f]ail[ing] to properly train, instruct and/or hire employees and/or third persons to monitor the conditions of the area where the accident occurred"; "[f]ail[ing] to establish

12

appropriate policies and procedures to inspect the premises in a timely manner and discovery[] and/or correct the known or knowable unreasonable risks, including [the] hazard . . . which directly and proximately caused Plaintiff's injuries"; and "[f]ail[ing] to hire third party contractors to take appropriate actions to preclude the occurrence which caused this Plaintiff's injuries." *Id.* ¶ 25(a)-(d), (f). Such allegations suggest only nonfeasance and are therefore insufficient to state a colorable negligence claim against Ray and McFeeters under the participation theory. *See, e.g.*, *Jackson v. Burlington Coat Factory*, No. 17-2459, 2017 WL 3534983, at *3-4 (E.D. Pa. Aug. 17, 2017) (holding a negligence claim against a store manager was not colorable where the complaint alleged the manager was responsible for the store's conditions and had actual or constructive knowledge of the broken escalator on which plaintiff was injured, but faulted the manager only for actions he failed or omitted to take); *cf. Greenberg*, 2011 WL 4336674, at *5 (holding allegations that a department store manager "*wrongfully created or directed the creation of* the 'dangerous and hazardous condition' that caused [p]laintiff's injury" sufficed to state a colorable claim under the participation theory (emphasis added)).[11]

---

[11] Plaintiff argues the allegations regarding Ray and McFeeters' failure to act support a colorable claim of misfeasance, citing the Pennsylvania Commonwealth Court's recent decision in *B & R Resources, LLC v. Department of Environmental Protection*, 180 A.3d 812 (Pa. Commw. Ct. 2018). The Court disagrees. At issue in *B & R Resources* was whether the managing member/sole member of a limited liability company could be liable under the participation theory for a statutory violation—failing to plug abandoned oil and gas wells. The Department of Environmental Protection issued an administrative order holding the managing member liable based on evidence showing that, after receiving numerous violation notices from the Department advising him that the company was required to plug its abandoned wells, the managing member made an intentional decision that the company would not plug the wells, but would spend its financial resources for other purposes. Although the Commonwealth Court reversed the administrative order and remanded the case to the Department for further proceedings on a causation issue, the court rejected the managing member's argument that a "knowing, intentional and deliberate . . . failure to act" can never be a basis for liability under the participation theory. *Id.* at 818. As noted, *B & R Resources* involved application of the tort law participation theory in

Because Plaintiff's claims against Ray and McFeeters, as pleaded in her original Complaint, are not colorable, the citizenship of these individual Defendants can be disregarded for jurisdictional purposes and the claims against them dismissed. *See Briscoe*, 448 F.3d at 216. Accordingly, Plaintiff's motion to remand will be denied, and the claims against Ray and McFeeters in Plaintiff's original Complaint will be dismissed without prejudice.[12]

The Court next considers Plaintiff's motion for leave to amend, in which Plaintiff seeks to "clarify and detail" her allegations against Ray and McFeeters so as to correct any pleading deficiencies in the claims against these Defendants in her original Complaint. *See* Pl.'s Mot. for Leave to File Am. Compl. ¶ 6. Plaintiff seeks leave to amend pursuant to Federal Rule of Civil Procedure 15, which provides that such leave should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants oppose the motion, arguing amendment should be denied as futile because the new allegations in Plaintiff's proposed amended complaint regarding Ray and McFeeters's active participation in the inadequate repair of the hotel ceiling

---

the context of a statutory violation, a context in which the Commonwealth Court has applied the theory by analogy. *See Kaites v. Pa. Dep't of Envtl. Res.*, 529 A.2d 1148, 1151 (Pa. Commw. Ct. 1987). Insofar as the Commonwealth Court's apparent expansion of the participation theory in *B & R Resources* would be applicable in the tort context, the Complaint in this case, which asserts only negligence claims against Ray and McFeeters, does not allege a colorable claim of knowing and intentional inaction by these Defendants.

[12] "The fraudulent joinder inquiry is a jurisdictional one and not a merits determination"; hence, upon finding a defendant was fraudulently joined in a removal action, a district court should dismiss the claims against that defendant without prejudice for lack of subject matter jurisdiction under Federal Rule of Procedure 12(b)(1). *Hogan*, 536 F. App'x at 211. Because the claims against Ray and McFeeters in Plaintiff's original Complaint will be dismissed without prejudice pursuant to Rule 12(b)(1), the Rule 12(b)(6) motion to dismiss filed by Ray and McFeeters will be dismissed as moot. The Court notes that dismissal of the claims against Ray and McFeeters without prejudice is particularly appropriate here, as the finding of fraudulent joinder is based on a pleading deficiency rather than a legal bar to recovery.

are refuted by Crossroads' written discovery responses in the Second Civil Action, which state the ceiling never required repair prior to the Adorasis' accident.

Defendants' futility argument is unpersuasive. As Defendants acknowledge, futility of amendment is ordinarily evaluated under the Rule 12(b)(6) standard. *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."). Defendants do not dispute that Plaintiff's proposed amended complaint states a claim against Ray and McFeeters under the participation theory.[13] Instead, Defendants urge the Court to assess futility under the summary judgment standard, citing *Sabatini v. Reinstein*, in which the court denied a motion for leave to amend on the basis that the amended pleading could not survive a motion for summary judgment. No. 99-2393, 2001 WL 872760, at *3 (E.D. Pa. July 10, 2001). In *Sabatini*, however, the plaintiff sought leave to amend only after discovery was completed, summary judgment motions were decided, and a trial date was selected. Here, in contrast, discovery in the Second Civil Action was never completed, and Defendants' assertion that the ceiling area in question was never repaired is disputed, as Plaintiff has represented that photographs of the ceiling reviewed by her engineer reflect prior improper repairs. Given the procedural posture of this case, in which Plaintiff has not had an opportunity to engage in deposition and expert discovery, it would be inappropriate to evaluate Plaintiff's motion for leave to amend under the summary judgment standard.[14]

---

[13] Indeed, Defendants conceded as much at the December 14, 2017, oral argument.

[14] Insofar as Defendants question whether Plaintiff has a basis to charge Ray and McFeeters with knowledge of any dangerous condition on the hotel premises, the Court notes that Crossroads' own interrogatory responses state that all of Crossroads' employees, including members of its engineering department, "are instructed to persistently inspect all areas of the hotel in which they travel." Defs.' Mem. in Opp'n to Pl.'s Mot. for Leave to File Am. Compl. Ex. D, ¶ 7. The

15

Although Plaintiff's proposed amendment is not futile, because the amendment would have the effect of rejoining defendants whose presence in the case would destroy diversity jurisdiction, it is also governed by 28 U.S.C. § 1447(e). *See Thomas v. Exxon Mobil Corp.*, No. 16-15750, 2017 WL 3235444, at *2 (E.D. La. July 31, 2017) (holding a post-removal amendment asserting a claim against a defendant previously found to have been fraudulently joined is governed by § 1447(e)); *Stonebrae, L.P. v. Toll Bros., Inc.*, No. 08-221, 2008 WL 2157000, at *8 (N.D. Cal. May 21, 2008) (holding an amendment seeking to replead a claim against a defendant found to have been fraudulently joined "would effectively be joining a nondiverse defendant subsequent to removal" and would therefore be governed by § 1447(e)). Section 1447(e) gives a district court discretion whether to permit a plaintiff to join a diversity-destroying defendant in a removal action. 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to state court.").

While the Third Circuit Court of Appeals "has not yet addressed the appropriate analytical approach to § 1447(e)," district courts within the Third Circuit have followed the approach adopted by the Fifth Circuit Court of Appeals in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987).[15] *See Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 840-41 (3d Cir.

---

interrogatory responses also state Crossroads' engineering department was responsible for maintaining the hotel premises and identify McFeeters, the supervisor of Crossroads' engineering department, as the person with the most knowledge concerning the hotel's maintenance procedures. *See id.* ¶¶ 15, 18; *cf. Lopez*, 2008 WL 2856393, at *4 (holding an individual defendant's status as the manager of the store where the plaintiff's injury occurred provided "a reasonable basis for plaintiff[] to suppose that [the defendant] owed a duty of care to the plaintiff[], and that [her] injury may have been caused by a breach of this duty").

[15] Although *Hensgens* was decided before § 1447(e) was added to the statute, courts have nevertheless relied on *Hensgens* in determining how to exercise the discretion conferred by § 1447(e).

2014) (finding it unnecessary to decide whether to adopt the *Hensgens* approach, but noting district courts within the Third Circuit have done so). Under this approach, a district court faced with an amended pleading naming a nondiverse defendant in a removal case "should scrutinize that amendment more closely than an ordinary amendment," and should "consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interests of not having parallel lawsuits." *Hensgens*, 833 F.2d at 1182. Such factors include "[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities." *Id.* If, after balancing the equities, the court allows the amendment, it must remand the case to state court. 28 U.S.C. § 1447(e); *see also Hensgens*, 833 F.2d at 1182.

In evaluating the first factor—the extent to which the purpose of the amendment is to defeat diversity—courts in this district have focused on "whether the plaintiff was aware of the non-diverse defendants at the time the complaint was filed in state court," reasoning that "[w]hen a plaintiff knows about the non-diverse defendant's activities at the time the complaint was originally filed but does not include that person as a party, subsequent attempts to join that person as a party will be viewed as an attempt to destroy diversity." *Stewart v. Wal-Mart Distrib. Ctr.*, No. 12-4958, 2013 WL 1482217, at *2 (E.D. Pa. Apr. 11, 2013) (quoting *Montalvo v. John Doe I*, No. 10-2617, 2010 WL 3928536, at *3 (E.D. Pa. Oct. 5, 2010)). Here, Plaintiff unquestionably was aware of Ray and McFeeters when she filed her Complaint in this action, but rather than omit them from the action, she named both of them as Defendants. Moreover, Plaintiff's proposed amendment does not seek to assert new claims against Ray and McFeeters, but to replead the claims she previously asserted against them in order to correct pleading

17

deficiencies identified in their motion to dismiss, as plaintiffs ordinarily are permitted to do. These factors weigh against finding that the primary purpose of the amendment is to defeat federal jurisdiction. *See St. Louis Trade Diverters, Inc. v. Constitution State Ins. Co.*, 738 F. Supp. 1269, 1271 (E.D. Mo. June 7, 1990) (finding a proposed amendment was not submitted solely for the purpose of defeating federal jurisdiction where the amendment sought to salvage claims against nondiverse defendants previously dismissed on the basis of fraudulent joinder due to inartful pleading); *cf. Montalvo*, 2010 WL 3928536, at *4 ("In a state law negligence action, it is reasonable for the plaintiff to 'name the employer that may be liable under respondeat superior and the employee who engaged in the conduct at issue.'" (quoting *Acerra v. Whirlpool Corp.*, No. 09-5402, 2010 WL 1265198, at *1 (D.N.J. Mar. 26, 2010))).

The Court also recognizes, however, that while Ray and McFeeters were named as defendants in this case from the outset, they were not sued in either of the two prior actions Plaintiff filed and voluntarily dismissed regarding the underlying accident. Although the reasons for this omission are not apparent from the record, the Court notes that Plaintiff withdrew the Second Civil Action and filed this action only after engaging in written discovery in the Second Civil Action through which Plaintiff discovered that Crossroads' engineering department was responsible for maintaining the premises on the date of the accident and that McFeeters was the supervisor of the engineering department at all relevant times and the person most knowledgeable about Crossroads' maintenance procedures. Even taking into account the broader history of this litigation, the Court cannot say the sole purpose of the amendment is to defeat federal jurisdiction. *Cf. id.* (finding the first *Hensgens* factor weighed in favor of allowing a plaintiff to amend his complaint to substitute diversity-destroying individuals for John Doe defendants where plaintiff did not learn the individual defendants' names until discovery).

The second *Hensgens* factors—whether the plaintiff has been dilatory in seeking amendment—also weighs in favor of permitting amendment. Plaintiff was not dilatory in seeking leave to amend, having filed her motion to amend just over a month after filing the original Complaint in this case in state court. Insofar as Plaintiff's earlier lawsuits are relevant to the dilatoriness inquiry, as noted, Plaintiff asserted claims against Ray and McFeeters less than two months after receiving Crossroads' discovery responses. *See Stewart*, 2013 WL 1482217, at *3 (holding a plaintiff was not dilatory where he filed a motion to amend approximately three months after filing his complaint in state court).

With respect to the third factor—whether the plaintiff will be significantly injured if amendment is not allowed—although denial of amendment would not preclude Plaintiff from maintaining a separate lawsuit against Ray and McFeeters in state court, district courts within the Third Circuit have recognized that the burden of maintaining parallel state and federal actions, requiring duplicative work and raising the prospect of inconsistent rulings, is both economically and, potentially, legally prejudicial to the plaintiff. *See id.*; *Montalvo*, 2010 WL 3928536, at *5. Courts have also suggested that even where, as here, a judgment against the defendants to be joined may ultimately be satisfied by their employer, denial of amendment may prejudice the plaintiff by preventing him from protecting himself against possible defenses to respondeat superior liability. *See Montalvo*, 2010 WL 2938536, at *4-5. Although it is not clear from the existing record whether Plaintiff will pursue her claims against Ray and McFeeters if forced to do so in a separate action, the Court nevertheless finds this factor weighs at least to some extent in favor of amendment.

Finally, as to the fourth factor—other equitable considerations—the factors considered by courts in this district include "the efficient use of judicial resources, the effect remand will have

on the defendant, and the expertise of the court relative to the applicable law." *Taylor v. GGNSC Phila., LP*, No. 14-7100, 2015 WL 5584781, at *7 (E.D. Pa. Sept. 23, 2015). The first and third considerations clearly favor allowing amendment, which will serve the interest of judicial economy by avoiding the risk of parallel litigation and ensure that Plaintiff's Pennsylvania law claims are decided by a Pennsylvania court. *See id.* ("[W]hen there is a lack of significant federal interest in deciding the state law issues, federal courts prefer to have state courts interpret their own laws." (quoting *Kahhan v. Mass. Cas. Ins. Co.*, No. 01-1128, 2001 WL 1454063, at *3 (E.D. Pa. Nov. 14, 2001))). The second consideration, in contrast, weighs to some extent against permitting amendment. Although courts in this district have held that remand is not prejudicial to a defendant where the claims are governed by state law, *see id.*; *Montalvo*, 2010 WL 3928536, at *5, Defendants note that if the case is remanded, they will lose certain procedural advantages available in federal court. Despite this loss of procedural advantage, the Court finds the *Hensgens* factors weigh in favor of allowing amendment in this case. Accordingly, the Court will grant Plaintiff's motion for leave to amend and remand the case to the Court of Common Pleas of Philadelphia County. Plaintiff's motion to voluntarily dismiss this action without prejudice under Rule 41(a)(2) will be dismissed as moot.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez   
Juan R. Sánchez, C.J.